DECLARATION OF F. GERARD HEINAUER

F. GERARD HEINAUER, pursuant to 28 U.S.C. § 1746, declares the following:

1. I am employed by the Department of Homeland Security ("DHS"), Citizenship and Immigration Services Division ("USCIS"), as the Director of the Nebraska Service Center in Lincoln, Nebraska. It is in that capacity and based upon reasonable inquiry and my knowledge, information and belief that I provide this declaration.

2. I am a named defendant in the case He v. Gonzales, 07-02765, presently pending in the United States District Court for the Northern District of California. Plaintiff Ying He seeks to have her pending Form I-485, Application for Adjustment of Status, adjudicated.

3. Plaintiff is a citizen of the People's Republic of China who has been assigned alien registration number A98 464 595. She filed Form I-485, Application for Adjustment of Status, at the California Service Center on May 9, 2005. The application was assigned receipt number WAC-05-155-55979 and remains pending. Due to a realignment of Service Center workload, the application was transferred to the Nebraska Service Center on March 14, 2007, for completion of the adjudication.

4. Plaintiff's adjustment of status application is based on an application for permanent employment certification for a professional worker with an advanced degree filed with the U.S. Department of Labor by Hewlett Packard Company on February 8, 2002. The U.S. Department of Labor ultimately certified the position, thus indicating that there are not sufficient U.S. workers available to fill the position and that employment of a qualified alien in the position described will not adversely affect the wages and working conditions of similarly-employed workers in the United States. The priority date for the labor certification, usually established by the date the request was initially accepted for processing, is February 8, 2002.

5. The approved labor certification was filed with USCIS along with a Form I-140 immigrant visa petition for alien worker on May 9, 2005, by Hewlett Packard Company on behalf of Plaintiff. The visa petition was approved September 15, 2005, thus indicating that Plaintiff appeared to qualify for the certified job which falls within the second preference (advanced degree required) immigrant visa category, and that the petitioning company showed the ability to pay the wage offered.

    The goal of the I-140 and I-485 filings are to obtain lawful permanent resident ("green card") status for Plaintiff and any qualified dependent spouse or child through Plaintiff's employment.

6. Plaintiff's status as an H-1B temporary nonimmigrant worker for Hewlett Packard Company expired on March 16, 2006, and apparently has not been renewed.

7. In recognition of the fact that the relationship between the petitioning employer and alien may change due to the lengthy period of time it takes for USCIS to adjudicate an adjustment of status application, Congress passed the American Competitiveness in the Twenty-First Century Act of 2000 (Public Law 106-313)("AC21"). AC21 permits the alien worker to adjust status based on employment with a different employer than the company that filed the I-140 visa petition, if the job duties of the new employment are the same or similar to the occupational classification certified by the Department of Labor.

8. General requirements for employment-based adjustment of status applications are that the alien is the beneficiary of an approved I-140 visa petition (or whose spouse is such a beneficiary), is in lawful immigration status on the date the Form I-485 is filed,

has a visa number immediately available under the annual per-country and preference category quota, and is not inadmissible to the United States under listed statutory grounds that include health-related, criminal, and national security provisions.

9. Plaintiff's application for adjustment of status is ready to be adjudicated except for her pending background and security check.

10. The attached Fact Sheet explains the different types of background and security checks relevant to the statutory requirement that the alien be admissible to the United States that must be completed prior to adjudication of Form I-485.

11. When an alien applies for adjustment of status, USCIS conducts several forms of security and background checks to ensure that the alien is eligible for the immigration benefit and that he or she is not a risk to national security or public safety. In addition to records checks against DHS's own immigration systems, these background checks currently include (a) a Federal Bureau of Investigation (FBI) fingerprint check for relevant criminal history records on the alien (e.g., arrests and convictions); (b) a check against the DHS-managed Interagency Border Inspection System (IBIS)

that contains records and "watch list" information from more than twenty federal law enforcement and intelligence agencies, such as the Central Intelligence Agency (CIA), FBI, other divisions of the United States Department of Justice, Department of State, DHS/U.S. Customs and Border Protection (CBP), and other DHS agencies (IBIS includes, but is not limited to, information related to persons who are wanted or under investigation for serious crimes or suspected of terrorism-related activity); and (c) an FBI name check, which is run against FBI investigative databases containing information that is not necessarily revealed by the FBI's fingerprint check or IBIS.

12. These law enforcement checks have revealed significant derogatory information on various alien applicants for immigration benefits, including applicants seeking permanent residency, which has resulted in the alien being found ineligible for the benefit and USCIS's denial of the application. Where applicable, the information has also resulted in aliens being arrested by law enforcement agencies or charged under removal grounds and deported from the United States following a final order of removal. In many instances, the disqualifying information on the alien has been

discovered as a result of the IBIS or FBI name checks, but it has not been revealed by a fingerprint check alone.

13. Since the terrorist attacks of September 11, 2001, the need to conduct more rigorous and thorough background checks on aliens who are seeking immigration status in the United States has required procedures that sometimes result in individuals not receiving their documents and benefits as quickly as in the past. In order to ensure national security and public safety, as well as to reduce the waiting time for adjudication and documentation of lawful status, USCIS is currently working with DOJ, DHS, and ICE to develop and implement improved procedures that will ensure that all of the background checks are completed and the results considered as quickly as possible. However, the public safety requires USCIS to make certain that the checks have been done before it adjudicates any application or petition and before it issues any immigration status documents to such persons.

14. USCIS will continue to perform any outstanding background and security checks as expeditiously as possible to help ensure that no eligible alien must wait longer than is reasonably necessary to receive a

decision on his or her application or petition and to receive evidence of his or her immigration status.

15. The fingerprint check must be less than fifteen months old at the time any application or petition is adjudicated. Plaintiff was fingerprinted on October 6, 2005, and again on March 20, 2007. The rescheduling of fingerprints is done to ensure that the case is ready to be adjudicated once Plaintiff's name check clears.

16. Plaintiff's preliminary IBIS checks have been completed. Remaining IBIS checks are performed by the officer at the time of final adjudication if deemed necessary.

17. Since 9/11, USCIS has submitted millions of name check requests to the FBI, thus taxing that agency's resources and creating a backlog in FBI's performance of complete security checks. During the initial submission period of December 2002 and January 2003, USCIS submitted almost 3 million names to the FBI. As of May 2007, USCIS reported 329,160 FBI name check cases pending, with 31,144 FBI name checks pending more than 33 months.

18. Plaintiff's name check request was electronically submitted to the FBI on May 18, 2005, less than two weeks after the Form I-485 was filed. FBI acknowledged

receipt of the name check on May 26, 2005. The name check remains pending.

19. There are five USCIS regional Service or Benefit Centers throughout the United States, each of which has jurisdiction over certain applications and petitions filed by persons or companies within its respective geographic jurisdiction, and/or exclusive nationwide jurisdiction over other types of applications. These Centers adjudicate cases on a mail-in basis only; they do not conduct in-person interviews. Employment-based adjustment of status cases like Plaintiff's are handled at the Nebraska and Texas Service Centers.

20. The Nebraska Service Center currently has approximately 73,135 employment-based Form I-485 adjustment of status cases pending, about 17,741 of which are still awaiting completion of FBI name checks before they can be adjudicated. Of an additional 81,970 (estimated) pending asylum/refugee-based Form I-485 adjustment of status cases, there are approximately 10,340 awaiting responses on FBI name checks. Of a total figure of approximately 84,355 naturalization applications filed and pending at NSC, 21,728 are awaiting responses on FBI name checks.

21. Cases at the Nebraska Service Center in which the pending FBI name check is the only impediment to final adjudication are audited on a weekly basis in order to identify those in which a response from the FBI has been received. Plaintiff's FBI name check is pending. A response is required from the FBI before the case can be adjudicated.

22. Service Centers have a process for expediting processing of certain applications and petitions. However, it is important to note that whenever a particular application or petition receives expedited processing and is moved up in the adjudications queue, it is at the expense of those still unadjudicated petitions or applications that bear an earlier filing date. If, for example, USCIS asks the FBI to expedite a case, this action comes at the expense of other name check cases, many of which have been pending since December 2002, because FBI would have fewer resources with which to work the other pending cases. USCIS is currently limited in the number of expedite requests that can be made to the FBI each week, and there is a backlog even in submitting the expedite requests for cases that have been deemed to meet expedite criteria.

23. In order to address in a consistent and fair manner the increasing number of mandamus actions filed nationwide by aliens awaiting decisions on their petitions and applications, USCIS issued specific guidelines for requesting an expedited name check from the FBI. Expedited processing may be pursued in cases at USCIS's discretion for military deployment, age-out cases and applications affected by sunset provisions, significant and compelling reasons such as critical medical conditions, loss of social security benefits or other subsistence, severe financial loss, extreme emergent situation, humanitarian situation, nonprofit status of requesting organization in furtherance of the cultural and social interest of the United States, Department of Defense/National Interest requests from official U.S. government entity, USCIS error, or compelling interest of USCIS.

24. To my knowledge, Plaintiff has not made a formal request for expedited processing. Expedite requests are determined on a case-by-case basis. Plaintiff states in her complaint that she wishes to have her green card quickly so that she may begin accruing the five years needed to apply for U.S. citizenship, and she doesn't want to pay for a work permit or travel

document anymore. This is a common reason for an alien to desire lawful permanent resident status and does not generally, as a single factor, constitute a special circumstance that would justify emergency or expedited processing. Other common reasons include a desire for "peace of mind" and the inability of non-lawful permanent residents or non-U.S. citizens to: petition for alien relatives, work and travel without special permission, get grant funds for research, apply for desirable jobs, qualify for scholarships or fellowships, or get in-state tuition for self, spouse or dependents.

25. Another common factor in the many mandamus lawsuits filed against USCIS involving pending FBI name checks is the plaintiffs' claims that they made repeated status inquiries about their case to USCIS, FBI, Congress, and the White House. While multiple status inquiries show the applicants' frustration with the pace of the processing of their applications, the inquiries, and mandamus actions, increase the workload of the FBI and USCIS, rather than having the effect of faster or special treatment of the subject applications. USCIS neither tracks nor records

customer service inquiries in the administrative record.

26. Most applicants for adjustment of status may apply for and be granted (usually in one-year increments) work authorization documents and advance parole documents to enable them to travel abroad while their application is pending. Plaintiff currently holds a work permit valid through June 1, 2008, that permits her to work for any U.S. employer she wishes. Plaintiff's advance parole travel document is valid through May 20, 2008.

27. The Nebraska Service Center is processing Ms. He's adjustment of status application in accordance with standard procedures.

I declare under penalty of perjury that the foregoing is true and correct.

Executed at Lincoln, Nebraska
on this 18th day of September, 2007.

F. Gerard Heinauer
Service Center Director
Nebraska Service Center